UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| RUSTIN G. JACKSON, *pro se*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.: 3:04-CV-344 |
| | ) | (VARLAN/SHIRLEY) |
| STATE OF TENNESSEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court for consideration of plaintiff's Motion for Summary Judgment in Overturning Campbell County [Doc. 140]. Plaintiff asks the Court to "overturn the Campbell County General Sessions Court ruling of NGRI against the [p]laintiff and dismiss the aforementioned cases of State of Tennessee v. Rustin G. Jackson." Doc. 140 at 1. As grounds for the motion, plaintiff states "the cases against Rustin G. Jackson violated Constitutional law (5th and 6th Amendments as outline in Complaint) in that Speedy and Fair trail [sic] was not presented . . . ." *Id.* Defendants have not responded to or otherwise opposed the motion, and the time for doing so has passed. *See* E.D.TN. LR 7.1(a), 7.2. Nevertheless, the Court will consider the merits of plaintiff's motion.

For the reasons discussed herein, plaintiff's motion will be denied. Furthermore, because the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine over plaintiff's claim seeking reversal of the judgment entered against plaintiff by the Campbell County General Sessions Court, it will be dismissed.

## I. Relevant Facts

According to plaintiff's complaint, on March 17, 2004, he was "peacefully walking" near his residence in Jacksboro, Tennessee, when he noticed Campbell County Sheriff's Deputies Darrell Mongar and Dustin Rose following him in a county vehicle. Plaintiff states that he stopped walking and asked defendants Mongar and Rose their purpose. *See* Doc. 36. A discussion between plaintiff and defendant Mongar followed. *Id*. At some point, defendants Mongar and Rose exited their vehicle, and "frisked the plaintiff and searched his pockets, each holding one of the plaintiff's arms . . . ." Plaintiff claims he protested by stating that he did not have anything in his pockets because "he was jogging near his residence." *Id.*

Following plaintiff's protests, according to the complaint, defendant Rose stated that plaintiff was "resisting" and sprayed plaintiff, causing him to lose consciousness. *Id.* Plaintiff states that at this time, defendant Mongar shouted at him and "with forethought, with unnecessary and extreme rigor, continued to assail the plaintiff before and after plaintiff was in restraints . . . ." *Id*. at 2. At some point, Tennessee State Trooper Rick Woodward arrived on the scene, and plaintiff states that he sought medical assistance from defendant Woodward, because plaintiff was suffering from periodic unconsciousness and "spasmodic seizures resulting from head trauma." *Id*. Plaintiff complains that defendants Mongar, Rose, and Woodward all denied him medical assistance. *Id*.

Plaintiff alleges that the physical altercation continued when he was taken to the Campbell County jail. *Id*. While there, plaintiff alleges that he was taunted and threatened

with police dogs. *Id*. In addition, plaintiff complains that he was denied copies of the Tennessee Constitution and state statutes and was beaten by Campbell County correctional officers. *Id*. He further alleges that the jail conditions were deplorable and that he was held there for two weeks before being released. *Id*.

Following his release from Campbell County jail, plaintiff alleges that Campbell County General Sessions Court caused him to be falsely imprisoned for four months while he was being evaluated at Lakeshore Mental Health Institute. *Id*. at 3. While there, plaintiff alleges that he was forced to take medications to which he was allergic. *Id*. Later, plaintiff complains that the Campbell County General Sessions Court denied him a speedy trial and subjected him to double jeopardy in violation of his constitutional rights. *Id*.

As a result of these alleged misdeeds, plaintiff seeks compensatory and punitive damages. *Id*. He seems to allege that defendants committed violations of 42 U.S.C. § 1983 as well as other state law claims. *Id*. at 4. In the instant motion, plaintiff specifically seeks summary judgment, presumably pursuant to Fed. R.Civ. P. 56(c), with respect to his claims against the Campbell County General Sessions Court.

**II.     Discussion**

Under Rule 56(c), summary judgment is proper if the record, taken as a whole, shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477

3

U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

With the instant motion, plaintiff seeks summary judgment "overturn[ing]" the handling of his criminal case by the Campbell County courts. The Court, however, lacks subject matter jurisdiction to grant the requested relief because the *Rooker-Feldman* doctrine provides that lower federal courts lack jurisdiction to review the final judgments of state courts. *See Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003) (citing *D.C.*

4

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

The Sixth Circuit has adopted a two-part inquiry for determining whether the *Rooker-Feldman* doctrine applies in a given case. *See Hutcherson*, 326 F.3d at 755. First, the Court must determine whether the federal claim is "inextricably intertwined" with the claim asserted in the prior state court proceeding. *Id*. A claim is "inextricably intertwined" where:

> [T]he federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id*. at 756 (quoting *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) (quotation omitted)). Second, the Court must consider whether the federal claim is a "general challenge" to the constitutionality of the state law applied in the state court proceeding, to which *Rooker-Feldman* does not apply, rather than a "specific grievance" that the law was invalidly applied in plaintiff's particular case. *Id*. If the *Rooker-Feldman* doctrine applies, a court must dismiss the case pursuant to Rule 12(b)(1) because it would be deprived of subject matter jurisdiction. *See Hutcherson*, 326 F.3d at 755 (citation omitted).

In the instant action, plaintiff's claim with respect to the Campbell County General Sessions Court's handling of his criminal case is inextricably intertwined with plaintiff's claims in that court. Plaintiff specifically asks this Court to "overturn the Campbell County General Sessions Court ruling of NGRI against the Plaintiff . . . ," Doc. 140 at 1, indicating

5

that the requested relief is "a prohibited appeal of the state-court judgment," *Hutcherson*, 326 F.3d at 756 (quotation omitted).

Furthermore, plaintiff's claim is akin to a "specific grievance" with the application of law in his case, rather than the general constitutionality of that law. *Id.* Thus, the *Rooker-Feldman* doctrine applies to plaintiff's claims seeking reversal of the Campbell County General Sessions Court's handling of plaintiff's state criminal case, and the Court is thereby deprived of subject matter jurisdiction over that claim. *See* Fed. R. Civ. P. 12(b)(1).

### III. Conclusion

Accordingly, for the reasons just discussed, the Court will deny plaintiff's motion for summary judgment [Doc. 140] seeking an order overturning the Campbell County General Sessions Court's handling of plaintiff's state criminal case. Because the Court lacks subject matter jurisdiction over that claim under the *Rooker-Feldman* doctrine, it will be dismissed. *See* Fed. R. Civ. P. 12(b)(1).

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE