UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| RUSTIN G. JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:04-CV-344 (VARLAN/SHIRLEY) |
| STATE OF TENNESSEE, et al., | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

This civil rights case is before the Court on defendant Rick Woodward's Motion for Summary Judgment [Doc. 153] and defendants Campbell County, Tennessee's, Darrell Mungar's, and Dustin Rose's Motion for Summary Judgment [Doc. 164]. In their motion for summary judgment, defendants Campbell County, Mungar, and Rose ("Campbell County defendants") simply state that they "join the motion and memorandum filed by defendant Rick Woodward and incorporate the same by reference as if completely stated herein." [Doc. 164.] Plaintiff has filed a response [Doc. 156] opposing defendant Woodward's motion and the matter is now ripe for determination.

The Court has carefully considered the pending motions along with defendant Woodward's supporting brief, plaintiff's response, and the relevant pleadings. For the reasons set forth herein, defendant Woodward's motion for summary judgment [Doc. 153] will be **GRANTED**; and the Campbell County defendants' motion for summary judgment [Doc. 164] will be **DENIED**.

## I. Relevant Facts

Aside from a few extraneous statements in plaintiff's response to defendant Woodward's motion, none of plaintiff's relevant filings contain any facts concerning the claims at issue in this case. Therefore, the Court must take the facts as alleged in defendant Woodward's motion and a deposition of plaintiff attached to the motion. Even then, the facts surrounding plaintiff's allegations are difficult to discern. As the Court is required to do in reviewing a motion for summary judgment, however, these facts will be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On March 17, 2004, defendants Darrell Mongar and Dustin Rose, both deputies with the Campbell County Sheriff's Office, were dispatched in response to a call about a prowler on Landfill Road. [Doc. 153, Attach. 5 at 1.] When they arrived at Landfill Road, defendants Mongar and Rose came upon plaintiff, Rustin Jackson, and they proceeded to search him. [*Id.* at 1-2.] Plaintiff alleges that while he was being searched, defendant Rose pointed a can of mace at his face. [Doc. 153, Pl.'s Dep. at 28.] While plaintiff states he was "not sure what happened" at this point, he alleges that all three men "got sprayed somehow" with the mace and wound up on the ground in a struggle. [*Id.* at 29-30.] Eventually, plaintiff was handcuffed and claims that "someone starting hitting me in the right side of the head just felt like with everything they had two or three times." [*Id.* at 30.] Plaintiff says that his "eyes [were] closed during all of this" and therefore he does not know who was hitting him. [*Id.*]

At this point, defendant Rick Woodward, a Tennessee state trooper who was off duty at the time, drove by the scene of the incident while on his way to Woodland Baptist Church in Jacksboro, Tennessee. [Doc. 153, Attach. 5 at 3.] Defendant Woodward stopped and asked defendants Mungar and Rose if he could assist with the situation and they asked that he watch over plaintiff until another deputy vehicle arrived. [*Id.*] While there, defendant Woodward observed that plaintiff had "a red face, a cut above one eye with a small amount of blood and torn clothing." [*Id.*] Plaintiff was eventually taken away from the scene when another deputy from the Campbell County Sheriff's Office arrived, at which point defendant Woodward left. [*Id.*] Defendant Woodward contends that he was at the scene of the incident "no more than five minutes." [*Id.*]

As a result of the March 17, 2004 incident, plaintiff was charged with the following: resisting stop, frisk, and halt; two counts of aggravated assault; resisting arrest; and destruction of government property. [Doc. 153, Attach. 4.] He was found not guilty by reason of insanity by the Criminal Court of Campbell County on August 24, 2004. [*Id.*]

Plaintiff filed suit *pro se* in this Court on September 5, 2004, claiming that defendants violated his civil rights under 42 U.S.C. § 1983 by "accosting him, resulting in ongoing medical costs and disabilities from injuries occurring from mistreatment, as the plaintiff was injured with unnecessary and extreme rigor and denied emergency medical assistance both during arrest and during incarceration."[1] [Doc. 7.] Plaintiff does not request a specific

---

[1]Plaintiff's lawsuit initially included the State of Tennessee, the City of Jacksboro, and Billy Marlow, a former correctional officer, as defendants. [Doc. 7.] The claims against each of those defendants and defendant Woodward in his official capacity were dismissed by orders of this Court. [Docs. 73, 107, 111.]

amount of damages, but instead "asks the federal court for justice and to uphold his constitutional rights, also for reparations for mental and physical suffering, and for an order of protection against the defendants." [*Id.*]

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the

truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III.    Analysis**

Defendants seek judgment in their favor on the grounds that plaintiff has presented no facts indicating that any of his constitutional rights were violated. [Doc. 153, Attach. 5 at 5-6.] Alternatively, defendants argues that plaintiff cannot succeed in his claims because they are entitled to qualified immunity. [*Id.* at 6- 10.] Plaintiff has not addressed either of these arguments in his response.

42 U.S.C. § 1983 provides a civil cause of action when a citizen is subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. It is well settled that § 1983 by its terms does not create any substantive rights but rather "merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on his § 1983 claims, plaintiff "must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." *Radvansky*, 395 F.3d at 302 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)). In other words, plaintiff must first show that he has suffered a violation of

5

a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *McKinley v. City of Mansfield*, 404 F.3d 418, 429 (6th Cir. 2005).

Here, plaintiff alleges that defendants used excessive force when one of the deputies present applied mace and struck his head while arresting plaintiff, and that the defendants failed to provide him with medical treatment following the use of the mace. Plaintiff's claim that the deputies used excessive force during his arrest is governed by the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Specifically, to allege a claim of excessive force, a plaintiff must show that the defendant's actions were, under the circumstances, objectively unreasonable. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir. 2000). Determining whether an application of force is reasonable under the Fourth Amendment requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (1989) (internal quotations removed).

Plaintiff's claim that he was denied adequate medical treatment falls within the scope of the Due Process Clause of the Fourteenth Amendment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). To allege a claim of failure to give medical treatment, a plaintiff must satisfy both an objective test and a subjective test. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective test requires that a plaintiff allege that the medical need at issue was so serious that it posed "a substantial risk of serious harm." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The subjective test requires

the defendants to have had "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamzoo County*, 390 F.3d 890, 895 (6th Cir. 2004). In other words, plaintiff must show that defendants were deliberately indifferent to his medical needs, which requires a showing that defendants knew of and disregarded a substantial risk of serious harm to plaintiff's health and safety. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

Plaintiff's complaint makes it difficult for the Court to determine the causes of action upon which plaintiff grounds his allegations, and the laws under which he brings these claims. However, given the significant leeway afforded to *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court will assume for the purposes of the pending motions that plaintiff brings his claims under the appropriate provisions of the Constitution and will analyze plaintiff's § 1983 claims as they pertain to defendant Woodward and the Campbell County defendants.

    A.    <u>Defendant Woodward</u>

Viewing the facts in the light most favorable to plaintiff, there is simply nothing in the record suggesting that defendant Woodward either exerted excessive force against plaintiff or failed to provide him medical treatment. As plaintiff admits in his deposition, he was handcuffed and lying on the ground by the time defendant Woodward arrived at the scene of the incident. [Doc. 153, Pl.'s Dep. at 37.] Additionally, defendant Woodward noted that "all he observed [as to plaintiff] was a red face, a cut above one eye with a small amount of blood and torn clothes." [Doc. 153, Attach. 5 at 3.] In his response, plaintiff does not contest

7

either of these statements. Although the Court draws all justifiable inferences in plaintiff's favor for the purposes of summary judgment, plaintiff still bears the burden of presenting specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Because plaintiff has failed to present any facts regarding the defendant Woodward's alleged use of excessive force against him or failure to provide medical care, he has failed to carry this burden. Accordingly, defendant Woodward is entitled to summary judgment as to plaintiff's claims. The Court need not address defendant Woodward's argument that he is entitled to qualified immunity.

    B.    <u>Campbell County Defendants</u>

Plaintiff's complaint alleges that he "was injured with unnecessary and extreme rigor and denied emergency medical assistance both during arrest and during incarceration," but presents no facts as to how he was injured by defendants or what injuries he sustained. [Doc. 7 at 1.] All the Court can discern from the record is that plaintiff was somehow sprayed with mace, at which point he got into a struggle with defendants Mongar and Rose. [Doc. 153, Attach. 5 at 2.] Plaintiff was eventually handcuffed and hit on the head while on the ground before being taken to the Campbell County jail. [Doc. 153, Pl.'s Dep. at 31.] While the facts regarding plaintiff's arrest are thin, plaintiff's allegations nevertheless make out a colorable claim of constitutional violations, namely use of excessive force in the course of an arrest and failure to provide medical care. In other words, the Court cannot conclude, based upon an essentially unsubstantiated motion for summary judgment, that there are not genuine issues

8

of material fact as to whether the Campbell County defendants committed constitutional violations in arresting plaintiff.

Furthermore, the Court finds there are genuine issues of material facts which preclude the entry of summary judgment as to the Campbell County defendants' claim of qualified immunity. Qualified immunity is an affirmative defense available to government officials for discretionary acts that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of qualified immunity are assessed on a fact-specific basis to ascertain whether the particular conduct of a defendant police officer infringed on a clearly established federal right of the plaintiff, and whether an objective, reasonable officer would have believed that his conduct was lawful under extant federal law. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The Supreme Court delineated a two-part analysis for assessing whether a governmental official should be protected by qualified immunity in *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court must consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. If a violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the right was clearly established. *Id.* This part of the inquiry, the Supreme Court has instructed, is "whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. While it is not necessary to find a case where

identical conduct has been deemed unconstitutional, the unlawfulness of an act must be apparent in light of pre-existing law. *See Wilson v. Layne,* 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).

As stated above, plaintiff's allegations make out a colorable claim of constitutional violation, that is, the use of excessive force in the course of an arrest and failure to give medical care. It is with the second part of the qualified immunity analysis, however, that the Campbell County defendants' motion fails. The question becomes, viewing the facts in the light most favorable to plaintiff, whether the Campbell County defendants knew their conduct was unlawful at the time it was committed. The parties dispute many of the facts surrounding plaintiff's arrest and subsequent incarceration and these create questions more appropriately answered by a jury with the opportunity to assess the veracity and credibility of the witnesses. As the Supreme Court has noted, "[a]lthough the application of qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Painter v. Robinson*, 185 F.3d 557, 567 (6th Cir. 1999) (citing *Johnson v. Jones*, 515 U.S. 304, 313-15 (1995)). For purposes of a summary judgment motion, plaintiff's account and all reasonable inferences drawn therefrom must be accepted as true. Thus, the Court cannot hold, as a matter of law, that plaintiff's account is implausible and grant summary judgment where credibility is determinative of the issue of qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 216 (2001) (Souter, J., concurring) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures

what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be.") (referring to *Graham v. Connor*, 490 U.S. 386 (1989)). Accordingly, the Campbell County defendants' motion for summary judgment will be denied at this juncture.

**IV. Conclusion**

For the reasons set forth herein, defendant Woodward's motion for summary judgment [Doc. 153] will be **GRANTED** and the claims against him will be **DISMISSED with prejudice**; and the Campbell County defendants' motion for summary judgment [Doc. 164] will be **DENIED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE